FILED
2024 Aug-19  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **HIGH LEVEL MARKETING, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **HIGHLEVEL INC.,** ) | **CIVIL ACTION NO:** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| _____ ) | |

## COMPLAINT

Plaintiff, High Level Marketing, LLC ("Plaintiff"), by and through its attorneys, for its Complaint against Defendant Highlevel Inc. ("Defendant") alleges and avers as follows:

### I.    NATURE AND BASIS OF ACTION

1.    This civil action against Defendant presents claims for trademark infringement arising under 15 U.S.C. § 1114, trademark infringement, false affiliation, unfair competition, and false designation of origin arising under 15 U.S.C. § 1125(a), for substantial and related claims of trademark infringement under Alabama common law, and for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, all arising from the Defendant's infringing and

unauthorized use of confusingly similar marks to Plaintiff's federally registered trademarks in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendant's goods and services.

2.      Plaintiff seeks both injunctive and monetary relief.

## II.      PARTIES

3.      Plaintiff, High Level Marketing, LLC, is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 400 Interstate Park Drive, Suite 424, Montgomery, Alabama 36109.

4.      On information and belief, Defendant, Highlevel Inc., is a corporation organized under the laws of the state of Delaware with its principal place of business at 400 N. Saint Paul Street, Suite 920, Dallas, Texas 75201.

## III.    JURISDICTION

5.      This Court has original subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 & 1338 because the Complaint states claims arising under federal law, including claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

6.      This Court has personal jurisdiction over Defendant because it transacts business in and has engaged in other conduct within the State of Alabama such that it has sufficient contacts with this State, it purposefully avails itself of the privileges and benefits of conducting business in the State of Alabama, a substantial part of the

events or omissions giving rise to Plaintiff's claims against Defendant occurred in Alabama and involved Defendant, and the exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

## IV.   VENUE

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because, as set forth herein, a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Alabama.

## V.   FACTUAL BACKGROUND

### A. High Level Marketing, LLC's Goods and Services

8.     Beginning as early as 2009, Plaintiff (through its predecessor in title) started offering a comprehensive range of computer software platforms designed for data management in the fields of advertising, promotion, and marketing. These offerings include, in particular, digital marketing services and social media management services, all in connection with the trademarks HIGH LEVEL MARKETING.

9.     Plaintiff holds valid and subsisting United States Trademark Registration Nos. 6,209,928 and 6,351,827 on the Principal Register of the United States Patent and Trademark Office ("USPTO") for the trademarks HIGH LEVEL MARKETING.

10.    Since its inception in 2009, Plaintiff (through its predecessor in title) adopted and began using the HIGH LEVEL MARKETING Marks to identify its computer software platforms and marketing services. From at least as early as October 2009, Plaintiff has achieved substantial success, and its marks have gained significant notoriety. Although headquartered in Montgomery, Alabama, Plaintiff has marketed and sold goods and services under the HIGH LEVEL MARKETING Marks throughout the United States.

11.    Over the nearly 15 years of continuous use, Plaintiff has invested substantial time and effort in developing significant goodwill in its HIGH LEVEL MARKETING Marks.

12.    Plaintiff operates an internet website at the URL <www.highlevelmarekting.com> (the "HLM Website"), which has been maintained since at least as early as October 2009. The HLM Website allows customers to review Plaintiff's advertising, marketing, and promotion services, make inquiries about purchasing these services, access Plaintiff's support services, and log in to Plaintiff's dashboard to directly access and manage Plaintiff's services, among other functions.

13.    Plaintiff also promotes its goods and services under the HIGH LEVEL MARKETING Marks on various social media platforms, including Facebook, X (formerly Twitter), LinkedIn, and Instagram. The goods and services offered under

the HIGH LEVEL MARKETING Marks have gained significant notoriety on these platforms, exemplified by at least 1,900 followers on Facebook, 1,100 followers on Instagram, and approximately 15,000 followers on LinkedIn.

14.     Plaintiff dedicates significant time, money, and effort to advertising and promoting the products and services associated with the HIGH LEVEL MARKETING Marks. These investments have cultivated a reputation for quality goods and services among its customers.

15.     Plaintiff has consistently used its HIGH LEVEL MARKETING Marks to distinguish its goods and services. This long-standing and extensive use has resulted in strong common law rights and substantial goodwill in the HIGH LEVEL MARKETING Marks.

16.     Due to Plaintiffs' advertising and promotional activities, consumers have come to recognize the HIGH LEVEL MARKETING Marks as symbols of the high-quality computer software platforms and marketing services offered by Plaintiff.

**B. Plaintiff's Trademark Applications**

17.     On May 7, 2020, Plaintiff filed two separate applications with the USPTO for standard character registrations of Plaintiff's HIGH LEVEL MARKETING Marks.

18.    Plaintiff filed a trademark application, Serial No. 88904846 ("Plaintiff's '846 Application"), for HIGH LEVEL MARKETING with a date of first use of at least as early as October 2009, covering "Search engine optimization for sales promotion; Content marketing development services; Brand strategy consulting; Brand positioning services; Marketing services, namely, conducting consumer tracking behavior research and consumer trend analysis; Consultation services, namely, creative and strategic consultation regarding development and production of marketing campaigns for others; Social media management services, namely, providing social media tracking and analysis for business management and marketing management purposes; Business management in the field of social media management services; Digital marketing services; Advertising, promotion, and marketing services in the nature of e-mail blast campaigns for others."

19.    On May 7, 2020, Plaintiff also filed a trademark application, Serial No. 88904831 ("Plaintiff's '831 Application"), for HIGH LEVEL MARKETING with a date of first use of at least as early as October 2009, covering "Platform as a service (PAAS) featuring computer software platforms for collecting, storing, tracking, analyzing, reporting, and sharing data and information in the fields in advertising, promotion, and marketing services; Platform as a service (PAAS) featuring computer software platforms for tracking website traffic, e-commerce activity, customer loyalty, and sales conversion rates in the fields in advertising, promotion,

and marketing services; Website design and development for others; Website design consultancy."

20.     On August 26, 2020, the USPTO issued a notice of publication for Plaintiff's '846 Application, and the Registration was issued on December 20, 2020, for HIGH LEVEL MARKETING, U.S. Registration No. 6,209,928. A copy of the certificate of registration is attached hereto as Exhibit A.

21.     On October 14, 2020, the United States Patent and Trademark Office issued a Non-Final Office action against Plaintiff's '831 Application on the basis that the applied for mark was merely descriptive under Trademark Act Section 2(e)(1).

22.     On January 25, 2021, the USPTO issued a "Note to the File" in Plaintiff's '831 Application indicating that the Examining Attorney had discussed the file with "Sr/Man. 8890846 ~ 6209928." A copy of this note is attached hereto as Exhibit B.

23.     Upon information and belief, the USPTO issued the "Note to File" to record the rescission of the Non-Final Office Action, based on the fact that Plaintiff's '846 Application for an identical mark and related goods and services had already been issued a certificate of registration.

24.     Following the issuance of the "Note to File" rescinding the Non-Final Office Action, Plaintiff's '831 Application was allowed to proceed to publication without the need for a response to the rescinded Non-Final Office Action.

25.     On February 10, 2021, the USPTO issued a notice of publication of Plaintiff's '831 Application, and the Registration was issued on May 18, 2021, for HIGH LEVEL MARKETING, U.S. Registration No. 6,351,827. A copy of the certificate of registration is attached hereto as Exhibit C.

**C. Defendant's Unlawful Activities**

26.     Upon information and belief, Defendant is engaged in providing computer software platforms for marketing and customer relationship management services under the name "Highlevel."

27.     Without Plaintiff's authorization, and after Plaintiff acquired protectable exclusive rights in its HIGH LEVEL MARKETING Marks, Defendant adopted and began using the mark HIGHLEVEL (hereinafter, the "Infringing Mark") in commerce throughout the United States.

28.     On information and belief, Defendant adopted and began offering goods and services under the Infringing Mark in or around July 2018, nearly ten years after Plaintiff first adopted and began using its HIGH LEVEL MARKETING Marks to identify its goods and services.

29.   Like plaintiff, Defendant maintains a website, at the URL www.gohighlevel.com ("Defendant's Website"). Defendant's Website prominently features the Infringing Mark, and refers throughout to products and services offered under the Infringing Mark. Defendant provides services that include digital marketing products and services, marketing reporting and platforms, and website CMS, among other areas. Attached as Exhibit D is an image from Defendant's Website prominently displaying the Infringing Mark. This image is also reproduced below.



30.   Defendant has willfully and actively traded on the goodwill of Plaintiff's HIGH LEVEL MARKETING Marks. These actions include, but are not limited to, sponsored advertising and search engine optimization and placement designed to direct consumers searching for the HIGH LEVEL MARKETING Marks to Defendants' website rather than Plaintiff's. Attached as Exhibit E is an exemplary

image of Defendant's affirmative attempts to trade on Plaintiff's goodwill. This image is also reproduced below.



31.     Defendant is a direct competitor of Plaintiff in the provision of certain goods and services, namely review solicitation platforms, marketing reporting and analytics, email marketing, website CMS, landing pages, blog posting, content development, business listings and citations, hosting, call tracking, and more.

32.     Defendant's use of the Infringing Mark, which is highly similar to the HIGH LEVEL MARKETING Marks, on substantially similar, and in some cases identical, marketing services and products, is likely to cause consumers and the

public to mistakenly believe that Defendant's marketing services and products originate from Plaintiff or are otherwise authorized or approved by Plaintiff.

33.     Plaintiff is aware of multiple instances of actual consumer confusion. Consumers have contacted Plaintiff after seeing the Infringing Mark use by Defendant, mistakenly believing that Plaintiff was the company offering the goods and services under the Infringing Mark.

34.     On information and belief, the goods and services offered under the Infringing Mark have been distributed, advertised, offered for sale, or sold in interstate commerce in numerous locations throughout the United States, including in the Northern District of Alabama.

35.     On April 26, 2024, Plaintiff sent Defendant a cease and desist letter (the "First Letter"). The First Letter informed Defendant of Plaintiff's concerns regarding the likelihood of confusion caused by Defendant's use of the Infringing Mark to identify Defendant's goods and services.

36.     On June 4, 2024, Plaintiff sent Defendant a second cease and desist letter (the "Second Letter"), again informing Defendant that its use of the Infringing Mark was likely to cause confusion with Plaintiff's HIGH LEVEL MARKETING Marks.

37.    Defendant's use of the Infringing Mark remains unchanged since being placed on notice of the likelihood of confusion between Plaintiff's use of the HIGH LEVEL MARKETING Marks and Defendant's use of the Infringing Mark.

**D. Defendant's Trademark Application and Petition to Cancel**

38.    On June 25, 2024, after receiving the First and Second Letter and being put on notice of Plaintiff's prior rights in the HIGH LEVEL MARKETING Marks, Defendant applied for registration of the Infringing Mark with the USPTO covering "downloadable computer software for use in CRM" and "providing temporary use of online, non-downloadable enterprise software for CRM; platform as a service featuring computer software platforms for CRM; software as a service featuring software for platform integration," Serial Number 98618596 ("Defendant's Application"). A copy of Defendant's Application is attached hereto as Exhibit F.

39.    Defendant's Application claims a date of first use of July 3, 2018, more than nine years after Plaintiff's began offering for sale and selling its marketing  and advertising goods and services under the HIGH LEVEL MARKETING Marks.

40.    On July 10, 2024, Defendant filed a petition with the Trademark Trial and Appeal Board ("TTAB") to cancel Plaintiff's U.S. Registration No. 6,351,827 for the HIGH LEVEL MARKETING Mark ("Defendant's Petition"). Defendant's Petition is based on allegations of fraud on the USPTO, priority and likelihood of confusion with Defendant's Application, merely descriptiveness, abandonment, and

failure to function as a mark. A copy of Defendant's petition is attached hereto as Exhibit G.

41.     Defendant's Petition alleges that Plaintiff committed fraud against the USPTO by not responding to the Non-Final Office Action issued during the prosecution of Plaintiff's '831 Application and not informing the USPTO that a response was not filed, despite the "Note to File" recording the rescission of the Non-Final Office Action.

42.     Defendant's allegation of fraud on the USPTO set out in Defendant's Petition is without basis because the Non-Final Office Action issued during the prosecution of Plaintiff's '831 Application was rescinded in the USPTO's "Note to File." Plaintiff therefore did not commit fraud on the USPTO by not responding the Non-Final Office Action.

43.     Defendant's Petition further alleges that, despite Plaintiff's substantial and continuous use of its HIGH LEVEL MARKETING Marks dating back to at least as early as 2009, Defendant's Infringing Mark has priority and is likely to be confused with Plaintiff's HIGH LEVEL MARKETING Marks.

44.     Defendant's allegations of priority and likelihood of confusion set out in Defendant's Petition are also without basis because Defendant owns no trademark rights in the Infringing Mark that existed prior to the date that Plaintiff commenced

use of Plaintiff's HIGH LEVEL MARKETING Marks on which to base these claims.

**E. Defendant's Infringing Activities Harm Plaintiff**

45. By using marks highly similar to the HIGH LEVEL MARKETING Marks in connection with digital marketing products and services, marketing reporting and platforms, and website CMS, among other areas, Defendant is trading on the goodwill and reputation of Plaintiffs and creating the false impression that Defendant's infringing goods and services are Plaintiffs' legitimate goods and services.

46. Defendant has been unjustly enriched by illegally using and misappropriating Plaintiff's intellectual property and goodwill for Defendant's financial gain.

47. Plaintiff has no control over the nature and quality of the products made, sold, and distributed by Defendant bearing the Infringing Mark.

48. Upon information and belief, Defendant has knowingly and willfully engaged in their infringing activities through the continued use of the Infringing Mark to identify its goods and services since being placed on notice of the likelihood of confusion between Plaintiffs' use of the HIGH LEVEL MARKETING Marks and Defendant's use of the Infringing mark.

49.     Plaintiff has suffered irreparable harm and damages as a result of the Defendant's infringing actions in an amount yet to be determined.

## VI.   COUNT I

### Trademark Infringement in Violation of 15 U.S.C. § 1114

50.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 49 as if fully set forth herein.

51.     Plaintiff is the owner of the federally registered HIGH LEVEL MARKETING Marks identified herein.

52.     The HIGH LEVEL MARKETING Marks are valid, distinctive, and protectable marks.

53.     Defendant has used its Infringing Mark in connection with Defendant's advertising, promoting, offering for sale, selling, and distributing goods and services legally identical to or highly related to goods and services covered by the Plaintiff's Registrations without the authorization, consent, or approval of Plaintiff.

54.     Defendant's unauthorized use of the Infringing Mark in connection with these activities constitutes use in commerce.

55.     Defendant's use of the Infringing Mark has been done in a manner that is likely to cause consumers to be confused, mistaken, or deceived as to the origin, source, sponsorship or affiliation of Defendant's goods and services and is likely to cause confusion and mistake in the minds of the public, and tends to create a false

impression that Defendant and its goods and services are sold, authorized, endorsed, licensed, or sponsored by Plaintiff, or that Defendant is in some way affiliated or approved by Plaintiff when it is not.

56.     Defendant's unauthorized use of the Infringing Mark has resulted in Defendant unfairly benefiting from Plaintiffs' intellectual property and goodwill to the injury of Plaintiffs and the public.

57.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's rights in the HIGH LEVEL MARKETING Marks and with the willful and deliberate intent to cause confusion and trade on Plaintiff's goodwill.

58.     Defendant's acts constitute trademark infringement in violation Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Defendant's acts constitute willful trademark infringement in violation Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60.     Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse consumers unless enjoined by this Court.

61.     Plaintiff is entitled to, among other relief, injunctive relief, reasonable attorney's fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117.

# VII.   <u>COUNT II</u>

## Unfair Competition in Violation of 15 U.S.C. § 1125(a)

62.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 61 as if fully set forth herein.

63.     Defendant has used the Infringing Mark in connection with Defendant's advertising, promoting, offering for sale, selling, and distributing goods and services legally identical to or highly related to the goods and services offered by Plaintiff under the HIGH LEVEL MARKETING Marks without the authorization, consent, or approval of Plaintiff.

64.     Defendant's unauthorized use of the Infringing Mark in connection with these activities constitutes use in commerce of the mark.

65.     Defendant's activities create the false and misleading impression that they have the approval, consent, or authorization of Plaintiff to use the Infringing Mark in connection with the advertising, promoting, offering for sale, sale, and distribution of goods and services when Defendant is not so authorized.

66.     Defendant engaged in these activities with full knowledge that the Infringing Mark is confusingly similar to the HIGH LEVEL MARKETING Marks and with the intent to confuse and deceive the public into believing that Defendant and its goods are sponsored by or otherwise affiliated with Plaintiff when they are not.

67.     Defendant's use of the Infringing Mark is without the authorization of Plaintiffs, is likely to cause confusion and mistake in the minds of the public, and tends to create a false impression that Defendant and its goods and services are authorized or approved by Plaintiff when they are not.

68.     Defendant's unauthorized use of the Infringing Mark has resulted in Defendant unfairly benefitting from Plaintiff's intellectual property and goodwill to the injury of Plaintiff and the public.

69.     Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.     Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. The Plaintiff has no adequate remedy at law.

71.     Plaintiff is entitled to, among other relief, injunctive relief, reasonable attorneys' fees, and costs of this action under Section 34 and 35 of the Lanham Act.

## VIII. <u>COUNT III</u>

### Trademark Infringement Under Alabama Common Law

72.      Plaintiff realleges and incorporated by reference the allegations of paragraphs 1 through 71 as if fully set forth herein.

73.     Defendant's use of the Infringing Mark in connection with the

advertising, promotion, offering for sale, sale, and distribution of goods and services is done without the authorization, consent, or approval of Plaintiff.

74.    Defendant has used the Infringing Mark, knowing they are confusingly similar to Plaintiff's HIGH LEVEL MARKETING Marks, in connection with Defendant's advertising, promoting, offering for sale, selling, and distribution goods and services.

75.    Defendant's activities create the false and misleading impression that it has approval, consent, or authorization of Plaintiff to use the Infringing Mark in connection with advertising, promoting, offering for sale, sale, and distribution of goods and services when Defendant is not so authorized.

76.    Defendant engaged in these activities with the intent to confuse and deceive the public into believing that it and its goods and services are sponsored by or otherwise affiliated with Plaintiff when they are not.

77.    Defendant's use of the Infringing Mark is without authorization of Plaintiff, is likely to cause confusion and mistake in the minds of the public and tends to create a false impression that Defendant and its good and services are authorized or approved by Plaintiff when they are not.

78.    Defendant's unauthorized use of the Infringing Mark has resulted in Defendant unfairly benefiting from Plaintiff's intellectual property and goodwill to the injury of Plaintiff and the public.

79.    Defendant's acts constitute trademark infringement in violation of Alabama common law.

80.    Defendant is liable to Plaintiff for Plaintiff's damages or Defendant's illicit profits.

## IX.    COUNT IV

### Declaratory Judgment

81.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 80 as if fully set forth herein.

82.    This is an action for declaratory judgment under 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

83.    There is a real, substantial, and justifiable issue in controversy between the parties regarding Defendant's purported trademark rights and Plaintiff's rights to continue using, and maintain federal registration of, Plaintiff's HIGH LEVEL MARKETING Mark, U.S. Reg. No. 6,351,827.

84.    Plaintiff is entitled to a declaratory judgment that Plaintiff has prior, valid and enforceable trademark rights in Plaintiff's HIGH LEVEL MARKETING Mark, U.S. Reg. No. 6,351,827; that Plaintiff did not commit fraud against the USPTO in seeking registration of Reg. No. 6,351,827 for the HIGH LEVEL MARKETING Mark; and that Plaintiff's trademark rights in the HIGH LEVEL

MARKETING Mark are senior to any purported trademark rights of Defendant in Defendant's Infringing Mark.

## X.   **Prayer for Relief**

WHEREFORE, Plaintiffs pray for relief as follows:

(a)   That the Court declare that Plaintiff has prior, valid and enforceable trademark rights in Plaintiff's HIGH LEVEL MARKETING Mark, U.S. Reg. No. 6,351,827; that Plaintiff did not commit fraud against the USPTO in seeking registration of Reg. No. 6,351,827 for the HIGH LEVEL MARKETING Mark; and that Plaintiff's trademark rights in the HIGH LEVEL MARKETING Mark are senior to any purported trademark rights of Defendant in Defendant's Infringing Mark;

(b)   That the Court award damages of an amount up to three (3) times Plaintiffs' damages or Defendant's illicit profits from their infringing activities;

(c)   That the Court determine that this action is an exceptional case and award Plaintiffs their reasonable attorneys' fees under 15 U.S.C. § 1117;

(d)   That the Court enjoin and restrain Defendant from furthering infringement of the HIGH LEVEL MARKETING Marks, including (1) by using any reproduction, counterfeit, copy, or other colorable imitation of the HIGH LEVEL MARKETING Marks to identify any goods or services not authorized by Plaintiffs, (2) by engaging in any course of conduct likely to cause confusion, deception, or

mistake, or otherwise harm Plaintiffs' goodwill and reputation or weaken the distinctive quality of the HIGH LEVEL MARKETING Marks, or (3) by infringing the HIGH LEVEL MARKETING Marks by manufacturing, producing, advertising, distributing, offering for sale, selling, or otherwise disposing of any good not authorized by Plaintiff bearing any reproduction, counterfeit, copy, or other colorable imitation of the HIGH LEVEL MARKETING Marks;

(e)     That the Court award punitive damages against Defendant to deter any future infringement of the HIGH LEVEL MARKETING Marks;

(f)     That the Court award Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums;

(g)     That all costs be taxed against Defendant; and

(h)     That Plaintiff be granted such other and further relief as the Court deems just and proper.

Dated: August 19, 2024          Respectfully submitted,

*/s/ Michael S. Denniston*
Michael S. Denniston
Jonathan D. Wohlwend
Bradley Arant Boult Cummings llp
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email:     mdenniston@bradley.com
           jwohlwend@bradley.com

*Counsel for Plaintiff High Level Marketing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Complaint will be served via Certified Mail on the registered agent of defendant as follows:


Highlevel Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801


*/s/ Michael S. Denniston*
OF COUNSEL